Good morning, Your Honors, and may it please the Court. In Texas, a minister can marry you, a rabbi can marry you, and a judge can marry you. But if a secular celebrant does it, then it's a crime. It's a Class A misdemeanor, punishable by up to a year in jail and a $4,000 fine. Under the statute, you must belong to a religion or be an elected official. There is no third option. But the District Court says not to worry. The law likely won't be enforced. But Article III does not require a citizen to play Russian roulette with his liberty in order to vindicate his constitutional rights. So, Appellant Eric McCutchan must make a choice. Put aside his beliefs or risk criminal prosecution in order to perform a meaningful service. This Court should reverse for three reasons. First, Section 2.202 is not some dead letter. It has been amended five times in recent years, including as recently as 2023. Second, the District Attorney of Tarrant County has never disavowed enforcement of the statute. And third, Appellant's desired conduct is expressive and therefore entitled to the more relaxed standard for pre-enforcement standing. Could I ask just a basic question? I noticed that you've used the term celebrant. Is that different than an officiant? Or is that the same thing? And is there some reason that the word choice, is there some basis for that? Yes, Your Honor. Center for Inquiry has a training program, and they call it their secular celebrant training program. So, that's the term they've used for individuals, whether they are officiating a wedding or performing other activities in the community. So, celebrant is the same thing as what other people might call officiant when you do a wedding, a preside over the wedding or whatever, perform the wedding. Yes, Your Honor. I think that's fair to say. Okay. Is there any evidence or is there a pleading that your client has a future concrete intention to perform a wedding in Tarrant County if the law were different or if there were some assurances given by the DA? Yes, Your Honor. On pages 75 and 77 of the record, Mr. McCutcheon has expressed a serious intent to perform a wedding in Tarrant County but has been prevented from doing so because of Section 2.202. Did he have a future intent? Can you tell us what that says? Because obviously, you know, just like in the SHU hospital case and the disability context where we've done standing issues there that you have to actually say, I want to go to this, I want to do this, or else you can't have standing. Yes, Your Honor. They don't have the exact language in front of me, but it says to the extent that Mr. McCutcheon has expressed a desire as well as CFI Austin who has received requests to perform marriage ceremonies and has been prevented from doing so. In Tarrant County. It needs to be in Tarrant County, doesn't it? Yes, Your Honor, for in Tarrant County, yes, Your Honor. What page in the record did you say it was? I believe 77, Your Honor. And just for me because I'm slow catching up this morning, you said you were going to cover three points. What's the third one again? The third point, Your Honor, is that this is expressive conduct and as such is entitled to the more relaxed standard for pre-enforcement standing. And in turning to my first point, let's look at the nature of the statute itself. The Texas Legislature has continued to amend Section 2.202. It's amended it five times in the past 18 years, and these are not simply housekeeping edits. In 2005, they added the criminal punishment piece by making a violation a Class A misdemeanor. And then in both 2009 and again in 2013, they expanded the list of qualifying judges who can perform a marriage ceremony. They did this again in 2015, and they also added cross-references to the Texas Tax Code. And then in 2023, they surgically deleted this expansive, about 20 different categories of judges list to read current, former, retired, federal judge or state judge. You do not polish a statute that you intend to ignore. And consider the timing. The most recent amendment in 2023 occurred after CFI had brought a similar lawsuit in Dallas County in 2018 and had a subsequent Fifth Circuit appeal in 2019. And the Texas Supreme Court in Traxler v. Energy Gulf States, Inc. says that when the Texas Legislature enacts or amends a statute, it is presumed to be aware of current case law when it does so. This Court can presume that when the Texas Legislature made that amendment in 2023, they were familiar with CFI's constitutional concerns about the religious organization language in the statute, they chose not to amend it, and they also chose to keep the criminal component intact with that 2023 amendment. And the Supreme Court's decision in Susan B. Anthony List v. Dry House confirms this principle. In that case, the Supreme Court recognized that there was a statute in force that carried criminal penalties and that there is a presumption that the government intends to enforce it. Section 2.202 here, it remains in force, it carries criminal penalties, and the Legislature keeps revisiting and revising that language. Further, this Court's own precedent agrees. In Speech First, Inc. v. Fenves, this Court explained that when a statute is repeatedly revisited and revised by the Legislature, it is not treated as moribund and instead carries a credible threat of enforcement. Now, the State relies heavily on Poe v. Ullman to argue that this is a harmless moribund law. However, this case is entirely different than the facts in Poe, which dealt with a contraceptive law that had been on the books for approximately 80 years, hadn't been amended, and hadn't been enforced. Whereas here, we are dealing with Section 2.202 that's been amended just a few years ago and five times in the past 18 years with criminal penalties attached to it. Further, the State's own website explicitly warns couples and officiants, quote, If an unauthorized person knowingly officiates the ceremony, the offense is a Class A Misdemeanor. Do you agree that if Mr. McCutcheon hasn't expressed a present intent to perform a wedding in Tarrant County that your organizational client's standing would also fail? No, Your Honor. Our organizational standing is based on a couple components, and it can involve Mr. McCutcheon but does not necessarily rise and fall. It can also rise and fall with its members. But you have to have some membership stated goal that it was going to be involved in promoting weddings in Tarrant County or doing something, don't you? I thought you were relying only on McCutcheon to provide the basis for the standing. Mr. Appellant McCutcheon is our primary anchor to standing, yes, Your Honor, who has indicated that he's completed the Secular Celebrant Program, which is an intensive program that's upwards of 40 hours of training to perform secular weddings in Tarrant County and resides in Tarrant County and would do so if it weren't for Section 2.202. In turning to my second point, I want to touch on the District Attorney's refusal to disavow enforcement of Section 2.202. CFI and Mr. McCutcheon sued the County Clerk and the DA, and throughout this litigation and the District Court proceedings and the Fifth Circuit briefings, the District Attorney has had ample opportunity to disavow enforcement of the statute. Well, Counsel, doesn't state law prevent the District Attorney from disavowing enforcement of a law? Yes, Your Honor, and that goes hand in hand with our point. Not only has the District Attorney not disavowed, but he's prevented from doing so. And that doesn't mean that's still a factor the Court should consider, because in 2023, under Government Code 87.011, it did implement the law where District Attorneys could not have blanket non-enforcement policies or they could be removed for official misconduct, which actually goes directly towards Mr. McCutcheon's very real threat of prosecution if there has been no disavowal and there can't be a disavowal. But if he can't disavow, that doesn't necessarily translate into he will enforce it. This is true, Your Honor. However, the Constitution does not require Mr. McCutcheon to go out and actually violate the law in order to bring his constitutional pre-enforcement standing claim. That would defeat the purpose of pre-enforcement standing. And in First Amendment context, because of the fear of chilling speech, which is what has happened here, there is that presumption of a credible threat. And further, at the motion to dismiss hearing in the District Court, counsel for the District Attorney stated, quote, the county follows the law full course, do whatever the court orders. That's on page 325 of the record. And the District Court ordered that CFI does not constitute as a religious organization. And so if Mr. McCutcheon were to solemnize a marriage in Tarrant County, presumably the District Attorney would enforce the law. Well, a lot of times people don't. The DAs don't enforce the law, though, don't they? Your Honor, that's true. There is prosecutorial discretion. However, Mr. McCutcheon shouldn't have to bet his liberty that the District Attorney would simply turn the other way. And moreover, District Attorney priorities switch overnight. They switch with elections. So there's a very practical effect here that with, in combination, the Texas Government Code saying you cannot disavow and the lack of a disavow here, that silence matters. And this Court's precedents make clear that that silence matters. In Umphress v. Hall, this Court held that a refusal to disavow is a chief factor in establishing standing, and that prospective factors like a refusal to disavow can outweigh any past circumstances, including a lack of prior prosecution. We haven't talked about the issue about whether your client's beliefs could – whether it matters, whether it could be constituted a religion. It's my understanding that your client specifically disavows that he practices a religion, and that he's not seeking cover under some kind of big umbrella of religion. He's specifically saying that religion is not included. Is that correct? Yes, Your Honor. That's correct. CFI does find that religion is antithetical to its belief system and that it does not fit within the category of religious organization. And so that's true for the organization as well, right? Yes, Your Honor. The organizational client. And so some sort of thing to say, oh, it's a big tent, and they can be included too, so they shouldn't worry about it. That's not your client's claim, and that's not what you would – you want to cling to. That's correct, Your Honor. It's antithetical to their very purpose to be captured as a religious organization, and the district court agreed with that notion, finding that CFI could not constitute as a religious organization. Can you talk then about whether or not they could be excluded under the statute constitutionally? I'm sorry, Your Honor. Address the merits. Yes, Your Honor. Very quickly on the merits. Mr. McCutcheon and CFI have brought claims under the Establishment Clause, the Equal Protection Clause, the Religious Test Clause, the Unconstitutional Conditions Doctrine, and the Freedom of Speech Clause. And I do want to go ahead. I see my time is short. I want to focus on that Freedom of Speech Clause claim because that is entitled to a presumption of a credible threat of enforcement. Here, Section 2.202 explicitly restricts who may conduct a marriage ceremony. And if this Court is wondering whether conducting a wedding ceremony is expressive conduct, if not, it's hard to imagine what is. The officiant stands up. They speak words of affirmation. They join a union. And the State has found that simply because they are not a religious organization that they cannot perform and conduct that speech. But it's government. It's speech on behalf of the government, isn't it? And so the part of the speech that they're saying that, you know, by the laws of the State of Texas, I hereby announce you're married, something to that effect, that's the part that you're doing, not whether you recite Shakespeare or, you know, the Corinthians passage. That's not what's being analyzed here. Your Honor, respectfully, under Section 2.202 and then 2.206, the same person who performs the marriage ceremony is the one that must sign the license. And Section 2.202 is very carefully crafted to not dictate what must be said during a marriage ceremony because it's inherently expressive. But it's the part that the State is interested in is that you sign the form and that you say whatever the bare minimum thing is, you know, you've got your — they don't — the State doesn't care about all the rest of that. So why isn't that completely — why can't the State say we prefer to have either elected officials or clergy or whatever, broader than clergy but not humanists? Yes. Respectfully, Your Honor, it is in that choice of excluding secular celebrants right out the gate and preventing them from solemnizing those marriages. And whereas the State has argued that there could be a separate non-legal ceremony, it simply goes against the constitutional rights to have the government — But do you have a right to perform a ceremony for a State? That's — is that some sort of protected constitutional right? Not in its own, but that actually hits right on our unconstitutional conditions doctrine claim on the merits, is that when the government goes out and extends that opportunity to those for a religious basis but then does not extend that same benefit to a secular celebrant, for example, that that's what's unconstitutional. But the government can prefer religion, can't it? The government can favor religion. In fact, that's what the First Amendment does, is favor religion. Yes, Your Honor. It can prefer religion, but here they've backed that preference with criminal penalties. It's a Class A misdemeanor. It's up to a year in jail and a $4,000 fine. They've backed that preference with criminal penalties based explicitly on religion. And I see I'm out of time, but I will reserve the rest of my time for rebuttal. Thank you very much.  Good morning, Your Honors, and may it please the Court. Amanda Sauls for Amicus, the Beckett Fund for Religious Liberty. CFI's religiosity underlies several threshold issues on appeal, but as CFI has just explained, it is not even arguably religious. CFI is a purely secular organization that strives for a world liberated from religion, which it considers oppressive and soul-defying. That places CFI squarely on the philosophical side of the line between religion and philosophy. Can you talk just a little slower? Of course, Your Honor. It's because of the echo. Apologies. No, it's not your fault. So CFI falls squarely on the philosophical side of the line between religion and philosophy, which the Supreme Court expressly recognized in Wisconsin v. Yoder. Yoder's line between religion and philosophy and its prioritized place for religion accords with the Founders' intent to prevent conflicts between secular and spiritual sovereigns. Do you have to get into this issue at all to decide this case, or do you have a viewpoint on that? The Court may not need to resolve the religiosity issue if it resolves the case against CFI on another standing ground. We don't take a position on any of the underlying standing issues that don't involve religiosity. But because several issues do, and those were briefed and discussed before the district court, the district court adjudicated this issue, and it's up on appeal underlying the standing issues. We would urge the Court to address this issue. Do you get us run afoul of the Torcaso footnote? If we did opine in the way that you would want us to opine, do we have a problem with the Torcaso footnote from the Supreme Court? You know, we are not the Supreme Court. We're middle management. And so can we— We're not the Supreme Court? No. I'm in the wrong building. Well, you have been on a Supreme Court before, but we're not on your fine state. But we're — so what do we do with the Torcaso footnote? Well, Your Honor, as Texas recognized before the district court, and this is at ROA 369, Torcaso is not precedent on this point. Instead, it's dicta. And that's exactly what most circuit courts to address this issue have held. I would point the Court to Kalka v. Hawk before the D.C. Circuit. That's a great— Say that again? Kalka v. Hawk before the D.C. Circuit explains exactly why this is not on point. It's not only because the Torcaso footnote is dicta on this issue, but because even if you were to read it as binding, which, again, it is not, it only stands for the proposition that a single organization, the Fellowship of Humanity, is not a religious organization under a specific tax provision in California State Court. Would that make us read the word religion differently in different parts of the Constitution, if we were to dismiss the Torcaso and say that it's really not, you know, the Maryland religious test for public office unconstitutionally invades the appellant's freedom of belief in religion? It appears to speak beyond the religious oaths clause. But are you asking us to read the word religion differently than in different parts of the Constitution, but to get around Torcaso and its problematic stance for your client's position? We're not, Your Honor. Your client. Your position as amicus. Yes. We're not, Your Honor. We're not asking the Court to interpret the religion differently across the Constitution. Instead, we're saying that it has a clearly defined term, and that is something that the Supreme Court recognized in Yoder, but extends to the founding. I would point the Court to Madison's definition, which is that religion is the duty to which we owe our Creator and the manner of discharging it. And practically, how you would determine that is you look and you ask whether the organization has beliefs and actions that are rooted in God or another transcendent authority or truth. Here, this is a very easy case. CFI has not only disclaimed its own religiosity, but its beliefs and its actions show it's not religious, and it is even anti-religious in some of its advocacy. So I would point the Court to ROA 213 and its response to the State's motion to dismiss, CFI that says that a bedrock tenet of the organization is to, quote, eschew religion, and its publicly available documents reiterate that same point. That's across our briefing on pages 6 through 8. So under any conceivable definition of religion, CFI is not a religious organization. We believe that's even clearer under the Texas Family Code because it tracks the First Amendment's religion clauses meaning. So we wouldn't have to get into all the complicated issues about Buddhism and Taoism and things that might be raised by someone else arguing to us today because of the specific disavowal in this case? Exactly. This is an easy case because CFI has disavowed its religiosity and because it is a purely secular organization that is nonreligious and anti-religious. That is enough, although I would encourage the Court to give clarity because this is an issue that comes up across several different statutes. Thank you. Thank you, Your Honor. Good morning, and may it please the Court. I'm Courtney Miller here on behalf of the American Humanist Association and the Interfaith Alliance Foundation. I want to address one thing about CFI's position and then get into a couple of other points about the test that Beckett is proposing. The standard for what religion means under the Constitution is not we're not religion because we say we're not a religion or we're not a religion because we're anti-religious. The definition of religion is an objective standard, and it has to be because of the constitutional implications. People cannot opt out of the strictures of the Establishment Clause. I think the — So in court, if they are forced to be a religion, even if it's their deepest personal thing, they don't want to have a religion? I mean, I think this gets to, you know, something that we talk about in our brief a little bit, Your Honor, which is there can be a different understanding between the colloquial kind of view or understanding of a term like religion and the legal definition of a term like religion. The Court in Welsh, I think, hits this point pretty clearly when it said a person's statement that his beliefs are nonreligious is a highly unreliable guide because most people are not aware of the broad legal meaning of religion. It seems, though, to take away some personal autonomy, which seems to be a difficult position for the people, because from your point of view. I mean, I think I agree with you in a sense, Chief Judge. I think this doesn't mean that CFI or its proponents, its members, need to go around calling themselves religions now. But in terms of whether the First Amendment applies and whether they are a religion, whether humanism or CFI's form of humanism is a religion under the Constitution, that's just a different question. So you think it is a religion? We think that what the constitutional standard is for what constitutes a religion is the parallel place test from Seeger. That establishes a constitutional floor for religion, and it's a functional test. And so what courts need to do in order to decide whether a given belief system is a religion under constitutional structures is to look at Seeger, look at how that belief system operates in the person's life. In the 60 years since Seeger, the most common approach that courts have taken to kind of put meat on the bones of that functional test are factor tests. Right? So these factor tests are what kind of provides structure and flexibility to Seeger's functional inquiry. If we were going to do that, would we need to do a factor test, or would we just say that we follow the Supreme Court's guidance that secular humanism is a religion and would be done with it if that were the approach? I think this Court could definitely rely on the footnote in Torcaso and say that, you know, secular humanism is a religion. I think the Court doesn't need to do that. But what I think, if this Court wants to answer the question of whether CFI is a religious organization or whether CFI's form of humanism is a religion, I think it needs to remand to the district court with instructions to apply Seeger, or if this Court wanted to adopt a factor test, instructions to apply a factor test, and make sure that the district court is sufficiently developed to apply the constitutional standard. I mean, what the district court applied was a theistic requirement, which is just unconstitutional. So is this any different than what the State wants, what you're arguing, that we just construe it really broadly and all go on about our business and say what's covered by the statute, and so we don't need to worry about anything and any criminal prosecution here? Your position is rather, you know, it's unique. And so I'm trying to figure out if it's really — does it do any work than what the State says, oh, it's sort of religion enough, and we don't need to get into that, and the Court shouldn't get into that, and so we should just move on and say it's religion, perhaps. Maybe that's not really the State's position. I mean, if I'm understanding your question correctly, accurately, Your Honor, I think, you know, under the — one way to think about this is under the district court's standing analysis, it didn't need to reach the religion question. So I think if this Court — Are you agnostic on the standing points? We do not have a position on the standing points, Your Honor.  Yeah. I think if the Court just affirms the district court's standing analysis, then this Court should not reach the religion question. The district court reached it but didn't need to do so. And I think it would be beneficial for this Court to clarify that a theism requirement is unconstitutional as the district court applied. But I do think that if the Court wants to answer or thinks it needs to answer this religion question, then because it's such a fact-based inquiry and because we don't have a record that allows the Seeger standard or a factor test to be applied, it needs to be remanded, and that remand should be limited to CFI's contentions about its form of humanism rather than any form of humanism broadly. I see that my time is up. Thank you. Thank you very much. May it please the Court. As the arguments of the amici show, what is or is not a religion is a difficult question. And as you said, Chief Judge Elrod, it's not necessarily one that needs to be decided today. Instead, this Court can resolve this appeal in Article III's standing. And that's for two reasons. First, as you mentioned, Chief Judge Elrod, there doesn't seem to be any allegations of a serious intent to engage in the prescribed conduct. There are no persons that are going to be married, no names, no locations, no dates, no times. But is it just what if there is a statement that I want to go to Tarrant County and perform a wedding? Is that enough? That would at least be some step towards a desired activity. Is there that in the record? I did not see that in the complaint, Your Honor. I point the Court towards Clerk's Record 77. There does not seem to be any statement as to that they wanted to have it in Tarrant County itself, just that some persons in the past need it. Does it need to be in Tarrant County if the Tarrant County is issuing the license or not? So at least in the statute, it seems like you have the same clerk who has to give the applicants and then the couple the license, and it must be returned to that. But you have to return them to that, but you could go off. But they could have it in another county, yes. Yeah. There doesn't seem to be a requirement. You can go to Jason County and, you know, you want to be in the country church somewhere in a different county next door, and you can so. So, but it's the county where you turn in the license and the signed document that if the wedding was performed, that's where he would prosecute you? Yes, Your Honor. It has to do with the paperwork. So it's not where the wedding is performed? No, Your Honor. So is there any indication that the celebrant wants to go to Tarrant County to get the paperwork and participate in that way and turn it into that county? At least in the complaint, there's no indication of that. There's just some past activity that they alleged that some persons had asked either Mr. McCutcheon or CFI that they wanted to get married, and they were told by CFI and Mr. McCutcheon that they were unable to due to State law. But other than that, there was no serious intent. I mean, the Johnson case is quite instructive here. There, there was a statute that prohibited pro bono representation because it was an in-kind contribution during the election campaign. There, there was allegations that they had represented pro bono before. They had named the specific clients that they wanted to represent. They discussed the scope of that agreement, and they had specificity. The only thing they did not do was cross the line and actually sign the papers because that would have been criminal conduct. Here, there does not seem to be any of those preliminary steps. Now, the argument mainly focused on a substantial threat of enforcement, and, you know, this Court should affirm the district court's findings on that because there have been no allegations of any prosecutions, investigations, or threats of prosecution. Well, we don't make people commit the crime in order to find out. That's — we're very careful about that. Sometimes we do let law enforcement or the state or someone say, we are not going to take that interpretation, and therefore we're not going to come after you. Those types of clear statements that they're not going to come after you might be enough to ward off standing. But without that, the fact that they haven't actually shown they're going to prosecute, I don't know that you went on that. What's your best case that they would have to find out? You know, they'd have to wait and do the thing and then find out. And that's not what we put people to do, especially in First Amendment context and things. So to be clear, it does depend on the context. So this Court does presume a substantial threat of enforcement for the free speech claim alone, but not for the other claims such as unconstitutional conditions or the Establishment Clause. Now, you're right, Chief Judge Elrod, in cases that have applied to presumption or have involved speech, when the presumption applies, disavowal is a quite important fact in the fact that it hadn't been done in those cases. But that also — those cases also include some past conduct. So the Susan B. Anthony List case, for example, they'd already engaged and said those statements and they were going to do so again. The Commission had said that one of them, at least there was probable cause that they had violated the statute. Here there is no past conduct. And like I said, if the presumption does not apply, they have to have at least some allegations that the district attorney is going to enforce the law. There's just this conclusory statement in Clerk's Record 77, paragraph 31 of the life complaint, that the district attorney, quote, may bring criminal charges. There's, you know, no evidence of allegations of —  Well, may bring — that's because that's the law. The district court may follow the law and bring criminal charges, and they haven't disavowed that they're going to do that. Why isn't that good enough for that part of it? So in the cases that have found that disavowal was quite important, there had already been some past conduct or some other indicia of substantial threat of enforcement. The McCraw case is quite on point here. There the plaintiffs are challenging a statute that had regulated drones. They brought two claims. One was under due process clause. One was under the free speech clause. For due process, the Court said that the fact that there was no evidence of arrests or prosecutions or enforcement, you know, in absence of any evidence or even credible threat of prosecution, they lacked standing. Now, they did not find the same for the free speech claim. And only then did the Court bring up the fact that the State had not disavowed enforcement. So the fact that that enforcement disavowal had not come into the first part of the analysis and only for the free speech part of the analysis — But that's not good for you. It is — it is for the claims that are — that don't have the enforcement. So but you stuck with the First Amendment claim, then. Okay. But as you highlighted earlier, this statute does not regulate what might be said at all. Counsel for the other side mentioned that there are words of affirmation or union that they would like to utter, but the statute does not prescribe that. It regulates paperwork. Okay. Who is going to be recognized by the State that can sign the marriage license and the one that the State would recognize. It doesn't regulate speech on its face. And for a presumption to apply, it must expressly regulate expressive activity, but it does not do so. I think Judge Graves may have a question. Yeah. You've got a statute that's not moribund. Is that right? Well, Your Honor, it has to be moribund in the relevant sense. The criminal penalties were added over 20 years ago. Like I said, there has been no given allegation of investigation or enforcement. There have been amendments which have cleaned up the language and — We're going to listen to it. It hasn't been repealed. That is correct, Your Honor. Still on the books? Yes. So on the State Law Library's website? Yes, it is still there. So it seems alive. So you're going to say to the litigants, we've got a statute that's alive and viable, and the district attorney is not allowed to disavow it, but you don't have standing to challenge it because you haven't done it yet? So they have standing to challenge it if they're able to allege it. So I can only challenge the law if I first violate it? No, Your Honor. So, of course, the pre-enforcement standing inquiry asks whether there's a substantial threat of enforcement. They don't actually have to cross the line into criminality to do so. But it is the appellant's burden to demonstrate, and at least with the motion to dismiss stage, to allege facts that there is some threat of enforcement. But in over 20 years, there's not even an allegation of investigation. And, you know, appellants had an opportunity to perhaps seek some sort of jurisdictional discovery if they wanted to. Clerk's Record 89, page 3 of the joint report, they said, quote, plaintiffs do not anticipate needing any discovery. And while they said that they might change their position later, at no point in the litigation did they seek discovery. Let me ask you a question about the State's interest in securing a valid document that says people are married or not married. Large consequences attached to that relationship, taxes and a whole range of matters. So long as two people say they're married and claim to be married and file a statement of record, get a marriage license or whatever you want to do it, that they are married, the State's interest seems to end at that point. You're married for purposes of whatever the law is. When you move beyond that declaration into, well, you didn't say exchange your vows, she didn't say she loved you, whatever it is, then the State's interest changes. My experience has been that there's broad variation across the country in this marriage business. I've performed a lot of weddings, not a lot of weddings, a number of weddings, all clerks sometimes get married and ask me to do that. And all judges experience it at some time. But what I'm talking about is what is the State's interest in validating it? The Church has its own views about what to do, and if you're a Catholic, you do it, or you say if you're a Baptist, whatever. But when it comes down to the licensing and the recognition of the relationship, if that's determinative, regardless of what's behind it, what's the problem? So, Judge Higginbotham, the interest of the State is in making sure that there's some sort of very clear steps that persons can take to get married. That is the State's interest. It's not about what words they may say during the ceremony. It's not have anything to do with... What I'm saying to you, why is it not just an answer that if two people say they're married and they go down and file a license, record themselves as married, then it's over. It's up to them. But all the consequences of being married, legal implications of that, are met. When you back away from that consequence of filing as a public record, which the State has a regular interest in doing, insisting that that be done, you can go take a lot of private ceremonies and so forth. You don't go down and file your license. You've got a problem. So why go behind what the ceremony is? It's not... Why is it recordation at all? Why is there recordation at all? Is that what you said? Why doesn't that exhaust the State's interest? So the State's interest is exhausted in having... But the State does want... That's why there are judges listed. There has to be some solemnity to and formality to proceedings, at least, that they have someone that they can go to. Now, the statute permits religious persons and organizations. I understand it does, yeah. And it does so as an accommodation to their interests. And that would otherwise run afoul of the free exercise clause. You could imagine the statute... I understand that it does that, but I'm suggesting if these people have their views about what the relationship should be or whatever, and what it ought to be to change that relationship into something the State recognizes, that you are married, the legal consequences attached to it. Now, what may be the theological consequences, whether it's a matter of their views, it's something the State has no business really inquiring into. So the State would at least have a rational basis in selecting to have judges, either current, former, retired, because you at least want to have some persons that you know are part of these ceremonies and claiming to have... That's just an expression that gives one avenue for people to do it, and it's convenient. I flew all the way to Washington with a good dear friend of mine, and I got there and said, is anyone here to check the laws of the Commonwealth to see if I can do this? And they came back and said, yeah, we did, and you can't. So he turned around to a young lawyer who was in the government and said, can you take care of that? He said, I did. So he went out and got himself authority to inform the wedding. And so I did a public ceremony, and then they went off to the private room and took the oath and became married. That young lawyer is now the Chief Justice. Well, that's a wonderful story, Your Honor. I thought I'd bring a little happiness. So the State has an interest in at least knowing which and having persons who have at least take the marriage seriously and that persons can go to when they're speaking on behalf of the State, as Chief Judge Elrod said earlier, when they're signing a document, this is something that the State is recognizing as official action of some sort. And they can choose. States could choose to have any person mail in a thing, and you can have your friends do it. California has purportedly very broad officiant allowance. Pretty much anybody can mail off and do it. Whereas in some of our states in the circuit, some of us can perform weddings in some states, and some of the states in the circuit don't let federal judges perform in their own home state. So it varies. Even within our circuit, states have different rules about who the proper person is to be. I don't believe Mississippi doesn't allow the circuit judge, but Texas does, a federal judge, but Texas does. So states can have their own rules about this under a rational basis as long as it's not constitutionally discriminatory. Is that generally true? Yes, Your Honor. That's generally true. There's a permissible range of setups that you could have among these states, and the fact that there's such a wide variety demonstrates that. But it is important to go back to the substantial threat of enforcement. Appellants seem to be hinging completely on the presumption of substantial threat of enforcement. And so it's important to once again recognize that the statute does not, you know, on its face restrict expressive activity in what they may say or not during the marriage ceremonies. Are you nervous about whether or not they have a present intent to perform a wedding such that you're relying on substantial threat of enforcement? Are you concerned that there is some evidence in the record, I mean, some statement made in the complaint? Because it would seem that that would be the much easier route for no standing if that were indeed true. And you keep coming back to substantial threat even though we've said, well, you shouldn't have to commit the crime, and the drone case says in the First Amendment context, why aren't you just relying on that? Is it because you think there is some statement that they might intend to perform a wedding? And you are an officer of the Court, and I appreciate your – that you've been very candid so far. Well, thank you, Chief Judge Elrod. So it's not that it has anything to do with my nerves, but it has to do with the focus of the arguments by the appellants was mainly on substantial threat of enforcement. But as I said earlier, and as you had mentioned, there does not seem to be a serious intent to engage in this activity. You know, I looked at the live complaints, and the only provisions of the complaints I have it here, if you look at Clerk's Record 77, where it mentions, quote, Mr. McCutcheon has been requested to conduct multiple weddings. CFI Austin has received multiple requests to provide secular celebrants to conduct weddings. Both Mr. McCutcheon and the organization have been required to inform these couples that secular celebrants may not, under Texas law, solemnize the marriage itself. Does it say in Tarrant County? Other than saying that Mr. McCutcheon resides in Tarrant County, there's no indication of the county otherwise in the complaints or of some intent to do so in the future. If this was like the Johnson case, for example, you would expect to have, this is the couple that we have. Here are their names. Here's at least when we want to have the date of the ceremony. Here's the location. Here are the things that we would like to say. We've done everything except for actually go, say the words, and sign the documents, because that is the last step before it would become criminal. But they have not done any of those things here and have not even alleged it. So at this motion to dismiss stage, you know, even though we have to credit their allegations, they simply have not produced those allegations that would be sufficient to support their action here. And to go back to substantial threat of enforcement, the reason I was focusing on it is because the standard is different for each claim. They've brought multiple claims, but the only one that could even possibly be entitled to a presumption of threat of enforcement is the free speech claim. Absent that, every single one of their other claims would have to have the burden of alleging the substantial threat. That's why I pointed to the nonexistence of threats, the prosecutions, or even investigations in over 20 years. But — What do you think about your argument on the ecclesiastical, you know, all the part at the end of your brief? Yes. Are you really wanting us to do that? No. No, Your Honor. We accept the conclusions of the district court that CFI and Mr. McCutcheon are not religious or religious organizations under the statute. We don't have to get into any of the line drawing about that. You don't — does the State not want us to get into the religion part of this case anymore? For purposes of this appeal, no. No, Your Honor. So you withdraw that part of your brief, not formally, but you're not relying upon those arguments at the back of your brief? Those arguments made at the back of the brief had more to do with, you know, whether there would be a substantial type of enforcement having to do with the clerk. The clerk has no screening mechanism to look to see is this person from a religious organization or not. The only things that are put on the license is the person's name. So you're not — the arguments, the very eloquent arguments by the Beckett Fund and the American Humanist Association, you're not engaging in those today. Is that right? Yes. Not for purposes of this appeal, Your Honor. We accept that those arguments — And you don't — to the extent that the district court did dive in about the deism — I mean, the deity, should we abstain from that or say we don't need that anymore? There's not to me to be reasoned to do so for affirming. If the court's going to affirm, they could just say it was on the lack of substantial — I guess to ask — — enforcement or serious intent. I guess to ask those questions in a different way, if you were writing the order in a ruling for you, what would you say? I get to play judge. Yeah. For the next 30 seconds. So it would be on two grounds. First, they did not allege a serious intent to actually engage in this activity for the reasons that I already mentioned. They did not say any dates, locations, persons that they would wish to marry, or the location. And second would be substantial threat of enforcement. First, for the non-free speech claim. There hasn't been any prosecution or threat thereof in over 20 years that has been alleged. And for the free speech claim, it does not on its face restrict what words they may say. They can use words referring to union or any words that they would like and to have a private ceremony. But they cannot speak and have an official act on behalf of the State in doing so. I see that my time has expired. Thank you. And this Court should affirm for the reasons stated. Thank you.  Ms. Stafford, do you have time for rebuttal? Yes, Your Honor. Five minutes, Your Honor. Go ahead. I want to come back to Chief Judge Elrod's question about Mr. McCutcheon and Tarrant County. Mr. McCutcheon has extensive training through that secular celebrants program. He lives in Tarrant County, and he wants to conduct ceremonies. Now, remember, this is just the 12b1 motion to dismiss stage. We're not dealing with evidence at this point. And my client is entitled to inferences on the facts that he's alleged. As the Supreme Court stated in Lujan, quote, at the pleading stage on a motion to dismiss, we presume that general allegations embrace those specific facts that are necessary to support the claim. He resides in Tarrant County. Let me ask you a question. So he performs whatever the ceremony is called, call it a wedding or whatever. Now what happens? What do you file with the state as a memorandum of that? Yes, Your Honor. Per Section 2.206, you would file with the county clerk. I understand. Ordinarily, what would result from that would simply be the filing of a document with one of the designated people. Yes, Your Honor. The county clerk or whatever it is. Yes, Your Honor. That would be filed with the county clerk. And then it is that act that is criminal under the statute. It isn't some notion where the county clerk has to go through and the county clerk has to be the one to allege that it was incorrectly done. Now, there's not some kind of – the county clerk is not sending all the wedding documents over to the DA's office for examination every month to say, Who signed that one? Who signed that? I mean, that would be highly irregular. There's many, many weddings and they're not checking up on their status. So that's why there might not be such a threat of enforcement. Also, is there – I mean – The person has a – when you do a wedding, you have to – the person performing it has to fill out a form and the form is filed. Yes, Your Honor. And appellants don't argue that the criminal law has to attach just based on whether or not the county clerk recommends it to the district attorney. That's a fundamental misstatement of how criminal law works. There's many ways that it could be referred to the district attorney. And public wedding ceremonies, they're inherently public. This is not like a lot of crimes that would take place behind closed doors in secret. This is something that would take place in front of potentially hundreds of people posted on the Internet. But a lot of times people do a public – not as often with the chief justice or something, but where you have a public ceremony. And like people who go on destination weddings, they often get married in a judge's office before they go on the destination wedding. And the public wedding is a – so you don't know who the person signing the document is and whether that was the person that was in a public wedding. So how does that fit in? Your Honor, under Section 2.202 and 2.206, they're connected. Under the law, it's supposed to be the same person who performed the ceremony. Now, that's not to disregard Your Honor's question about whether there were multiple ceremonies, one perhaps in the Cayman Islands, one here. But it does go to the fact that the government is endorsing one of those ceremonies when it is done by a religious officiant, and it is not endorsing that speech by Mr. McCutcheon here. And there is the distinction there. And I would very briefly like to touch on the other components of standing, because as Chief Judge Elrod did mention, we have spent the vast bulk of our time talking about prosecution of enforcement, which does go back to the district court's holding that the district court only ruled that based on the lack of a threat or found that it was wholly speculative, that there was a risk of prosecution, which we adamantly deny here. The district court also noted that it concluded that individual plaintiffs had alleged sufficient facts against Defendant Nicholson, the county clerk, that it had alleged sufficient facts to establish those other parts. It was just concerned about the threat of prosecution. So that is where appellants have focused their arguments here today. And very, very quickly, there is a presumption that there is a credible threat of enforcement, because we are not dealing with a moribund law. It's been amended many times. And appellees try to argue that there's been some kind of compelling contrary evidence, but we're at the motion-to-dismiss stage, and there is, under Institute for Free Speech and Johnson, at this early stage there is no contrary compelling evidence. I see my time has expired. We ask that you reverse. Thank you. Thank you. We appreciate the very fine arguments presented in this case. I think it was very good for students to be able to see the very fine arguments by all the attorneys in this case. And obviously it's very important to us as we consider the case. So thank you all. The case is submitted. The Court will take a ten-minute recess before considering the remaining case for the day.